Good morning, Your Honor. Kevin Bringo on behalf of Appellant. The District Court in this case did something that was unprecedented. It acknowledged that it was doing it. It was raised with the question of determining whether, under the New York Convention for Enforcing Foreign Arbitrations, it could invalidate or refuse to confirm an arbitration under Article V of the New York Convention. It's never been done before. The Court acknowledged that it had never been done before. It had no guidepost, therefore, for what laws to look to, what standards to apply. And as a result, perhaps it was well-intentioned, the District Court was, but it made several legal errors that this Court is to review de novo. It did what? The Court below made several legal errors that this Court is to review de novo and that ought to be reversed because of those errors. Because it was in these uncharted waters of looking to apply a duress defense or invalidate or refuse to confirm the arbitration under Article V, which had never been done. Now, the first, what Article V... We're an admiralty court, too. You know, we're used to sailing in uncharted waters. Yes, and thankfully there's a large body in maritime law that gives guidance to courts. Here, under Article V, subsection 2, the Court was looking at the sort of a safety valve provision that says, the enforcing country does not need to enforce the foreign arbitration. If to do so would be contrary to the public policy of that country. Here, the enforcing country is the United States, so we're supposed to look at the public policy of the United States. The threshold question is, well, can a duress saying that the contract with the arbitration provision was signed under duress, would that be contrary to the public policy of the United States? I'm not here to tell you that in all circumstances the answer to that question would be no. I can imagine such circumstances. But the problem is, and we need to start with defining, the Court below should have started by defining, what is the public policy of that country, the United States? It didn't do that. It looked to a very specific definition of California law, and California's definition of what duress is, and was holding Chinese authorities, you know, five, four years prior to those standards, and finding that since Chinese authorities applying Chinese law, Chinese law enforcement authorities didn't abide by the California standard for duress law, found also, in fact, incorrectly under California law, that this was somehow violated of the public policy of the United States. What should be done, and what the Court didn't do, is start with determining what the public policy of the United States is, and what this article of this convention is ordering the Court to do. Now, obviously every state and many jurisdictions within the collected 50 states are going to have different public policies. This convention says the public policy of that country. So we're going to need to be operating at a fairly high level, not a minutia level, not looking at local ordinances or even necessarily state statutes. We can do so for guidance, but not for the letter of that law. We need to determine the public policy of that country here in the United States. Let me ask you this, Counselor, because I'm getting a little bit confused by your argument. It was my understanding that the district court said duress may form the basis for denying an international arbitration under the New York Convention. And they said, the district court said, under the New York Convention, a defense is to be construed narrowly, can make such a defense when competent authority in the country where the recognition is sought finds recognition. It's my understanding you do not challenge that finding. That is correct, Your Honor, although may I? In your brief, you did not challenge that finding. That's correct. Okay. So then the next thing that the district court did is say, well, I'm going to look at California law to figure out about duress in this particular situation. It's also my understanding you did not challenge that. I would take issue with that assumption. Where do you challenge that in your brief? Certainly in our opening brief, I believe, pages 22. My worry is that I understood you're not challenging that California law could be the law for duress in this situation. What the? I mean, my worry is that it seems to me now you're kind of backtracking as to what I thought your brief was really going into. Okay. My worry was, first of all, can duress form that? He said yes. I said, okay, if they're not going to challenge that, I'm not going to look there. Then the next thing is, where do they go to find that duress? It's my understanding from reading your brief, you didn't challenge that California law could be that. Then, at that point, I have to determine whether the district court could find duress in this situation. And I understand you're challenging that. Correct. So that's why I'm worried about your argument now. I understand. You're kind of getting policy-oriented, which I didn't see in the brief. If what I'm worried about is, give me what you said in the brief, which is, this is not duress. Very well, Your Honor. What I was pointing to was I think it's found at pages 22 and 23, which is our argument regarding the act of state doctrine. Yes. Well, I can understand the act of state doctrine. If they're going there, I understand that that's what you're suggesting. I understand what the act of state doctrine is, and that is one of your arguments. If that's where you're going, then I understand what you're talking about. I think what I was trying to do was articulate it perhaps under a different way or at a higher level, but that's really what we're talking about. Duress, as the Court well knows, could be accomplished by state actors or civil third parties. What makes this case different than probably many others, in addition to the fact that it's a case of first impression under Article 5, is that it is state actors. It is Chinese state actors. So when the Court asks if whether we are saying in all circumstances duress could never be found under Article 5, my answer is no. I think it probably could be. I think that's what the convention says. But certainly that would be with regard to private third-party actors. Here we have state actors, and we have the act of state doctrine. Now, just a minute. Before you go there, because I want to really get after this. Because it seems to me that the only thing the Court said was not could they do it or should they do it. In fact, they didn't. He doesn't care whether they could or should. What he said was under California law, if they did it and they had the opportunity to do it, nonetheless, Fan could not properly consent to the agreement. He's not suggesting that they can't do it or shouldn't do it or it's wrong to do it. All he's saying is Fan can't consent to it when he had a reasonable belief that he couldn't be detained if he did not or that he would be detained if he did not sign. So he's again going to duress. He's not talking about I'm not going to let the Chinese do this. I'm not going to do that. All I'm saying is if they have the right to do it and if they did it, then how can I say Fan can properly consent? That isn't a violation of the state or act of state doctrine. Well, respectfully, I do believe it is. But let me answer the Court's specific question. I can tell Your Honor is very curious about it. You're saying the police officer in a local prison carries out an act that the act of state doctrine applies? Is that what you're saying? If it's in conformity with the locality's law. No, that's not a definition of the act of state doctrine. Where are you getting that from? The case law, I believe we laid forward in our briefs at page 22 and 23 of the opening brief, discusses the authorities for the act of state doctrine. And the point we're trying to make with it here is that if Chinese authorities are following Chinese law, that it cannot be wrongful. Now, this also goes to Justice Smith. It's all right to put somebody in prison to get their signature on a contract. It's actually permissible under California law, which is the point I was going to make in response to Justice Smith's question. What the Court did here, if we're going to look at California law, and again, I don't think that's the end all be all. The Court is charged under this convention with determining the public policy of the United States in general. But if we're going to look to California law as a guidepost, which the Court here did, it needs to follow California law. Duress under California law has two elements. The first is not coercion in general. It is wrongful coercion. And here the Court ignored that entirely. And what we were trying to point out is you cannot have a determination of the first prong of California's duress law that it was wrongful coercion if it's something that the local authorities were entitled to do under Chinese law. If you want to say, well, we're going to apply California law, could this have been done in California? My answer is actually, yes, it could. California Penal Code, Section 1001, among many others, allow for pretrial conversion, excuse me, pretrial diversion, pre-complaint diversion. This is the public policy not only of California but of many states. In, for instance, a shoplifting case, this happened to a friend of a friend. A young teenager was accused of shoplifting from Macy's department store. Detained by the local store detectives, brought to the police station, booked, photographed, fingerprinted. The parent came down and they were told in this city, here's your choice. We will prosecute you for this theft under criminal court or you can sign this agreement with Macy's that promises you will pay them for the makeup or whatever it is and we will let it go. This happens in California thousands if not millions of times a year as it does in every state. It's the Chinese version of a pre-complaint or a pretrial diversion. Now, one of the points that I know they're going to make is, well, he had a lawyer come and the lawyer was told, well, if you're going to tell him he can sign it, then that's fine. But if you're going to tell him anything else, you can leave. Well, the same would happen in California, right? If this teenager is arrested and is being offered pre-complaint diversion and a lawyer shows up on the scene and tries to start negotiating the terms of the pre-complaint diversion, they will be told, look, there's pre-complaint diversion. So you're telling me or telling us that you keep a person in prison. There's no reason to keep them in prison. And that person is told, we're going to keep you here until you sign this agreement, until you send the $300,000. Those are the same. They're comparable. The teenager that took something from Macy's and the businessman that goes to China gets picked up, put in prison, got nothing against them. You can go, but we're not going to let you go until you sign this. All right. I think it's very significant in answering that question in the Court. It should not escape the Court's attention. This was a Chinese citizen. This is a multimillionaire Chinese citizen businessman in China. He was not an American foreigner who happened to be caught there doing business. He lives there. He has family here. And he comes back and forth between the two.  Why don't you enforce the arbitration award in China? Because the assets are here. He has no assets in China? Not these assets is our understanding. Does he have other assets in China? Unfortunately, it's not in the record. And if I knew the answer to that, I would answer, I'm sorry, Your Honor, I don't know. My understanding was it was brought here because this is where the assets are. And this is why we have this convention such as this convention and U.N. conventions similar to it. China is now one of our most important trading partners. And we don't want to set the precedent that says anything that happens in China is going to be gauged by the held to the letter of California law. Again, we're looking to derive the public policy of the United States in general. Well, if that's the case, that's the policy that the convention was supposed to be implementing. The convention would have said, you shall confirm the award. No exceptions. Well, but no, there is. And I think it's an important exception. And one would hope as a citizen of the United States, probably as citizens of the other signatory countries, would hope as well that there would be a safety valve. Right. If you're going to ask me a hypothetical such as what if the man was being tortured, right, which probably would be contrary to the letter of Chinese law, then one would think that level of duress, that type of torturous duress. Or what if the private third party here, my client or some other third party, had literally held a gun to his head or done something. That type of duress, I would not, I could not make this same argument. What I'm talking about is this is a Chinese citizen, multimillionaire businessman, who had legal counsel, who submitted to the arbitration. My worry is this, Counselor, and that's why I wanted to kind of put you where I was. Fair enough. You're not going to challenge that duress can form the basis for denying the award, which I don't think you did. And you're not going to challenge that California law could be the law of duress we could look at. At that point, we are really looking at what did the district court do for duress?  And my worry is that once I get to that, my standard of review is that the district court is in a superior position to appraise and weigh the evidence, and if the determination regarding the credibility and its determination regarding the credibility of the witness is entitled to special deference. So now I have a district court to whom I'm supposed to give deference. They have these facts. I can cite all these facts. I mean, I wrote them down exactly what the district court said, and now it seems to me that your big argument is they ignore ample evidence disputing the rest, and they gave too much weight to Fan's testimony, and that now you're saying in California they can do the very thing that that district court felt was bad. All of those are great arguments for the district court, but once having determined that this is duress and that this is applicable for duress, I'm having a terrible time understanding how I'm going to come over the top of the district court and say, no, I like this fact better than yours. I like that fact better than yours, so I'm going to throw your case out. You have to explain that to me. How do I know? I see that I'm out of time. If I could take a moment to answer. Thank you, Your Honor. I appreciate it. What I'm not suggesting is that this Court would issue an opinion that goes deeply into the facts and reaches contrary factual conclusions or points out facts that are omitted. The Court, you know, could do that if they're clearly erroneous, and I think I will not do that in this argument, but I will leave it to our briefs to point those out. But to answer Your Honor's question, which I think is important, first of all, what I would imagine that this Court, what I'm asking this Court to say in this argument is, to the district court, you made a legal error in, first of all, treating California law as the end-all, be-all. It was supposed to be a guidepost, an inspiration to derive the public policy of the United States. You treated it as though it was, you know, the tabula rasa, and you held the Chinese to the letter of California law. I think you've left that one. Have you got another one? Number two, that if you are going to look at California law, you need to apply California law correctly, and there are two prongs to California duress. You only looked at prong number two. You did not address prong number one. That is a legal error that this Court is to review de novo. Which is the unlawful act of another? Whether the act of the others was wrongful. And here we're talking about Chinese authorities acting within Chinese law. As I said, if you judge that versus Chinese law, it's clearly not wrongful, whether via the act of state doctrine or through simple common sense. Or if you're going to hold them to California standards, it's still not wrongful because we do the same thing in California as we do across the country. We have debtor's prisons. They are for people who refuse to pay debts, not those who cannot afford to. This is a multimillionaire Chinese businessman who was negotiating and refusing to pay money that he admittedly owed. If you look at the December 2006 contract that he admits he freely negotiated, he agreed to pay over $2 million. There was no question that he owed a debt. And they've kept the equipment all this time. So I know I'm out of time. But I hope that answers Your Honor's question. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Audrey Koo on behalf of Appellees Eastern Tools and Equipment and Mr. Guo-Shing David Phan. The appellant is correct in that the district court did reach an extraordinary result. However, that result only came about due to the extraordinary facts and circumstances of this case. Mr. Dai is asking this court to reverse a Chinese arbitration award that was procured from an agreement that was executed by Mr. Phan under duress. The district court carefully weighed and analyzed the evidence and found there was ample evidence in support of a finding of duress due to Mr. Phan's imprisonment in April of 2007 and his release being conditioned upon his execution of an agreement which the arbitration proceeded. Mr. Phan then was monitored by the Chinese police. He received calls from April through July. And he was told that he needed to come back by the Chinese police to execute a second agreement, the July agreement. And rightfully so, in fear of re-imprisonment, he complied and he went ahead and executed that agreement under duress again. In this case, there's no basis for reversal. The court thoroughly considered the evidence and found that the plaintiff failed to produce any evidence to dispute Mr. Phan's statements in his declaration. They found that Mr. Dai was given the opportunity to cross-examine Mr. Phan at deposition. And they also found that Mr. Dai had the opportunity to present contradictory statements to refute Mr. Phan's declaration, but failed to do so. Let me ask you. I think counsel's full argument is what is duress? There's no question your client has the job to prove the burden, to prove the duress. So what are the elements of duress? In this case, duress consists of confinement of a person or whether it's lawful or unlawful, basically confinement such that he's ---- That's wrongful, doesn't it? There's also ---- A wrongful act of another? Yes, Your Honor. So the civil code does state unlawful confinement of the person, but it also allows a third definition, confinement of such person lawful in form but fraudulently obtained or fraudulently made. Well, I understand. So he's saying what was the wrongful act? In this case, the district court found that there was third-party duress where Mr. Dai approached Mr. Phan while he was in prison and had him execute the first agreement. So the wrongful act was Dai's actions, not the Chinese actions? The district court expressly stated that. Is that what you're really saying? Do you think the district court was saying Dai's actions were the wrongful actions? Not necessarily. I believe the district court was not making any finding as to the legality, lawfulness or unlawfulness as to the Chinese authorities' actions. Well, I appreciate that that's your argument. I guess I'm focusing now, because it seems to me that under Tarpey v. County of San Diego, duress has to be when one is induced by the wrongful act of another to make a contract under circumstances that deprived him of the exercise of free will. So tell me what was the wrongful act we're really talking about here? Because if we're talking about the wrongful act being that he was put in prison, then I might have to go to the art of the state doctrine to say why should we say that's wrongful or not. So what is the wrongful act? I believe in this instance, Your Honor, there were several wrongful acts. One of them could be requiring that Mr. Fan execute an agreement in order to secure his release from prison. The other could be requiring that he return to the police to execute a second agreement. Is the execution of the document in order to get release something that prison officials did? From my understanding, Your Honor, it was the Chinese police authorities who informed him that. Okay, so that goes to the art of the state doctrine. I don't think we can get into what they did wrong or right, or the art of the state might preempt us. What wrongful act do we have otherwise? That's his big argument. There is no wrongful act besides what the state did. Tell me what the district court said is the wrongful act outside of what China did. Well, Your Honor, there was also the monitoring of Mr. Fan after his release from prison. That's again what China did, the monitoring. What wrongful act is there which is not what Chinese government did? Because he's going to yell art of state doctrine at me every time you don't say something. Well, I believe then we also have to look at Mr. Dai's own actions in approaching Mr. Fan during his imprisonment and taking advantage of imprisonment to secure his signature on the first agreement. So knowing of his circumstances, undermining his capacity to act freely, and then taking advantage of the situation. Yes, Your Honor. In this case, there were several facts that further support the finding of duress. Mr. Fan was imprisoned and confiscated, had his cell phone confiscated, was at all times supervised by two policemen who stayed with him in the same room. And on the first night, he was forced to sleep on the floor. He was deprived of any meaningful access to an attorney. When he attempted to meet with an attorney, the attorney was ejected when it became clear that he was advising him on matters other than instructing him to sign the agreement that was presented to him. Subsequent to that, he was monitored by the police. He was called at least 10 times. He was then told to come back, execute a second agreement, nearly identical in terms to the first agreement. You know, through the combination of all of these circumstances were effective enough to deprive him and obviate his consent to his free consent to that agreement. I understand the circumstances depriving him of the exercise of free will, as I understand it. Yes, Your Honor. Okay, so let's go to the ratification. Yes, Your Honor. Okay. Here he is outside the jail. He's doing what he has to do. He sends a payment. Yes, Your Honor. Why is that not ratifying this? He wasn't in jail. He wasn't there with the Chinese. He wasn't around. He wasn't doing anything. He was just wandering around. And he sends a payment. Yes, Your Honor. I believe given the trauma of his first experience, the duress continued to exist in his mind such that he did not freely consent to make that payment. Is that what the district court thought? The district court felt that one payment does not establish the absence of duress, does not refute the absence of duress. The district court found that there was sufficient temporal connection between his arrest in April, his subsequent monitoring by telephone, and then his being required to come back and sign a second agreement by the police. They found that all of those successfully established a connection, one event to the other, all the way up until the making of that payment. And even though he wasn't in police custody at that time, the district court found that he did not freely consent. What about the participation in the arbitration? The district court ---- I mean, that's his big argument. Why participate in the arbitration if you really thought this? Yes, Your Honor. The district court found that there's no valid ---- there's no waiver by participating in arbitration. We're not talking about waiver. We're talking about ratification. Yes, Your Honor. I believe that there's a sort of a disconnect with the ratification argument from the get-go, because I believe ratification usually arises in circumstances where the principal is trying to ---- is being asked to ratify the actions of an agent who perhaps lacked authority at the time the contract was executed. And here we don't have that issue because Mr. Phan, as the president of the Coapelli Eastern Tools and Equipment, he clearly has authority to enter into agreements on behalf of the company, on behalf of himself, of course, as well. However, the issue here is whether or not he did so freely. So I don't think we even get to that ratification argument because of that initial hurdle. He ---- it's not an issue of authority. It's an issue of consent. There is one issue here that's really worrisome to me. The district court did all of this without a hearing. And I know that's an abuse of discretion as to whether he needs a hearing. But I guess the bigger problem for me is this. If the district court didn't have a hearing and the district court was only looking at written evidence to make this determination, why should I give any deference to the district court in that determination? Why can't I look up here and say, you know, I can read this as well as the district court can and I don't think he's right? I understand your question, Your Honor. The district court was making findings of fact. So what? Well, she found that the facts were undisputed. Yes. Yes, Your Honor. She didn't make findings of fact. She found that the facts were undisputed. Yes. She treated this like a summary judgment proceeding. She did in that form. She required each side to present a statement of undisputed issues. Yes, Your Honor. And then you were allowed to respond. And then she found ---- and then what she did was she looked to see where there were undisputed facts. And she laid those out in her findings. Yes, Your Honor. And then based on those undisputed facts, she asked, does that amount to duress? Yes, she ---- I had the same concern as Judge Smith. If she was weighing evidence or weighing, judging credibility, and that was important to the outcome here regarding duress, then I don't understand how she could do what she did. It would have to go back for an evidentiary hearing. But the way I answered that, and when I got into this a little bit deeper, is what it looked like. She said there are ---- these ---- the parties agree that these facts are undisputed. And on these undisputed facts, there's only one legal conclusion. This is duress. Yes, Your Honor. She did state in her opinion ---- in her order that there was no dispute as to the material facts upon which she based her opinion. And the appellant does not contest that, you know, Mr. Phan was not in prison, that he was not asked to execute an agreement while in prison, that he, you know, was denied access to an attorney, meaningful access. They don't dispute any of that. They are simply trying to find reasons to otherwise justify an agreement that was executed without his free consent. So there's no dispute as to the fundamental facts. When did Mr. Phan make the $200,000 payment? Was he still in China at the time? The first $200,000 payment, Your Honor, was when he was in prison in April, in China, yes. But we're not talking about that. He's talking about the payment that could be used for ratification. When was that payment? That payment was made in February 2008, also in China. But he wasn't in custody at that time. He was not, Your Honor. He just made the payment. He made the payment, again, under duress. How? He wasn't in custody. What was the duress? Because he feared re-imprisonment if he did not comply with the wishes of these Chinese State actors. Was he told if he didn't make the payment he would be subject to re-imprisonment? I'm not exactly clear on whether or not he was told that statement. But he just – so he – in his declaration, he said he made the payment because he was afraid of being re-imprisoned? Yes, I believe so, Your Honor. And they didn't dispute that? I don't recall any fact that was offered in dispute of that. So I believe that the material facts, the fundamental facts were not disputed. And even though the plaintiff was given an opportunity to cross-examine Mr. Fan, they still were not able – At a deposition. At a deposition, yes. But they were not able to produce any fact that contradicts his statements. They could have gone to the Chinese officials that he identified as his – you know, the ones who imprisoned him and solicited their cooperation and provided statements to support their position, but they didn't do that. They were unable to find any other evidence to contradict Mr. Fan's statements. Is this arbitral arbitration award enforceable in China? I'm not certain as to that, Your Honor. Is China a member of the New York? They are, Your Honor. I would believe that – And it would be enforceable in China, assuming there's money there. Assuming there's money, assuming that they were – that Mr. Fan would be unable to prove that an exception to enforcement applies, then yes. In China. In China. Right. Now, the payments, I see, of $250,000, $300,000. Then we're talking about $200,000. Were separate payments made? Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. $200,000 in April and then another $300,000 in February. When he was first in prison, my understanding is that he was told by the jailers that for him to get out, he had to sign the agreement. Yes, Your Honor. And how much money was he required to pay then? I believe they instructed him to wire $200,000 at that time. Not $250,000. I believe it was $200,000. I thought it was $300,000 due on 4-30. I believe the $300,000 was required in February of 2008. I'm sorry, I stand corrected, Your Honor. It was an initial payment of $300,000. And then $200,000 in February. Yes, Your Honor. $250,000. Yes, Your Honor. $250,000.  And it was $250,000 on February 2008. Yes, Your Honor. And was that money, say, $300,000 paid before he was released? Yes, Your Honor. It was before. Yes, Your Honor. But I just heard something said about that it wasn't paid until after. No, that was the second payment. There were two payments, Your Honor. One while he was still in prison and a second when he was not in prison. Okay. So when he was first released, it was after he paid $300,000. Yes, Your Honor. He was instructed to pay $300,000, plus sign the agreement, and then he was permitted his release. Sign the agreement, pay $300,000, and you get a pass to leave the jail. Yes, Your Honor. I see that I'm ---- Did he remain in prison after he was told that there were no charges against him? I believe he learned that there were no charges around day four of his imprisonment, and his total time in prison was about 10 days. So he still was there another six days. He was arrested on the 17th of April. Yes, Your Honor. He was released on the 30th. Yes, Your Honor. So it depends on whether you count weekends or not. I know that's a very contentious subject, Your Honor. I wouldn't dare approach it. Okay. If there are no further questions, I'm prepared to submit on the briefs. Thank you. Thank you, Your Honors. Let me speak briefly to answer a couple of record questions that came up during that colloquy, Your Honor. With regard to ratification, I wanted to point out that not only did they file counterclaims, but one of the arguments that he made in the arbitration was rescission, that not that it was an invalid contract based on duress, but that the contract should be found invalid, he should be allowed to rescind it because there had been anticipatory breach. He treated it like a valid contract in one of his many, many counterclaims, and he submitted more than 8,000 pages of documents. This is all in the decision. He was represented by law firms. This was not a kangaroo court. Did he raise duress in the arbitration proceedings? In his counterclaims, what he did was what I was going to say is when in extrapolating the public policy of this country, the United States, one of the things we should look to to see if there was any sort of due process regarding this duress claim in the foreign jurisdiction. Well, here he not only could and did file a court case challenging the duress, but then he voluntarily withdrew that, chose to participate in the arbitration. So did he have due process in the courts of the foreign jurisdiction? Yes. Did he have due process to raise this duress claim in the arbitration itself? Yes. He brought counterclaims, several of them, at least five, and raised duress as one of them. In addition to, as I say, receipt. What did the arbitrator say about the duress? They said that they did not find that it to be a valid claim. When he signed the July contract, he'd been out of jail for three months. And this was a very key point, which was another one I was going to raise that came up. In the July contract, part of the consideration that our clients gave was it says we withdraw all complaints that you have violated the law. We're not going to come after you anymore in this way. That's in the contract. So this is why, from that point on, July 26, 2007, when he signs the July contract, part of the consideration is this is done. This stuff with the police is done. And he never heard from them again. And so for him to say he carried this fear forward such that seven months later in February he made that payment under duress, well, you know, that was part of the consideration. And there's handwritten changes he made in that July agreement. He's the one that asked for the arbitration clause to be added. There's elements to that July agreement that are more favorable than even the December 2006 initial negotiated agreement. So did the arbitrator – did the arbitration award – I didn't read it very carefully because the district court judge didn't really deal with the arbitration award. Right. But did the arbitrators make findings or – They did. Did they deal head-up with the duress claim? They did, Your Honor. The arbitration – So he submitted that claim to the arbitration – to the arbitrators. Was it a panel or just one? There were three. He selected one. We selected the other. It was a standard international arbitration. If he submitted the duress claim to the panel and they raised it against him, why doesn't that sort of result? That is part of the waiver argument, that there's a heavy burden that weighs in favor of this arbitration award. And we say, you know, you certainly waived it by choosing to litigate it in that forum. What you're really arguing is ratification, aren't you? Well, we're definitely arguing that. It's all over our papers, but – Well, did they have – did the arbitrators have the authority to – I guess they did, but I guess under the convention, the district court still has authority to not enforce it if the district court finds independently that it was – Violates the public policy of this country. Public policy. That's the district court's only chance. Which is here, duress. Right. And what I'm saying is one of the legal errors – again, this is a case of first impression. What do we do under these circumstances? One of the legal errors the court made, perhaps because it didn't have the benefit of a body of law. It perhaps can't think of everything the first time. But I think in this case, it cried out for, and what we were saying was exactly what Justice Pius is saying is – Judge. I'm sorry. You're welcome for the promotion. Judge Pius. What the court is saying is that look to the substance of the due process that occurred in the foreign jurisdiction. He had his chance. Did the foreign jurisdiction offer a chance to raise this in its courts, its actual state courts? The answer here in China is yes. How do we know that? He did it. He voluntarily withdrew it. Did the arbitration itself offer a similar due process? Yes. How do we know? He did amongst even arguing rescission on other things. He chose one of the arbitrators. This was not some sort of kangaroo court situation in the arbitration. So he had all of that process. And so if we are then going to give the, you know, put the heavy burden, quote-unquote heavy burden on them to prove that this should not be confirmed, one of the things in determining whether this award or enforcing this award in the United States would violate the public policy of the United States is to say, well, was there any kind of similar United States-like due process that makes us comfortable? And the answer is yes. This is one of our primary trading partners. And we cannot hold them to the standards of minutiae California law. This is the one thing that I somewhat dispute in what you just said. I believe that Fan has the burden to show duress. I don't think there's any question there. But when you're trying to prove that he ratified it, I don't think Fan has the burden anymore. I think you then have the district. I think you then have the burden. The district court certainly agreed with Your Honor, and I will respectfully disagree. I know I'm outvoted. I guess I'm trying to figure out where it is that you find your best case for that he still has the burden when you're proving ratification. As we have cited throughout our papers. Are your best cases in your papers? They are, Your Honor. You don't have to cite them again. What I just want to point out is the legal standard that's quoted there is that what the district court is supposed to do is see if there is any reason, a reason, to grant it, right? The heavy burden weighs in favor of granting it. And is there a reason to grant it? And instead what this Court did was ignore the law and tried to hold Chinese authorities and the arbitrators to the minutiae of California law rather than extrapolating the broad public policy principles of this country. But you say that keeping people, bringing, arresting people, putting them in prison, and keeping them there until they pay their bills. That's an accepted practice. It's done in the United States all the time if the person is refusing to pay rather than able to pay. This is Bearden v. Georgia and a host of cases says it's okay. I think it's sad, but it's true. That's your shoplifting example. Yes. And to answer one last thing I wanted to say in answer to a question that came up was who was the wrongful actor, supposedly, in the district court's view. Look at page 43 of the excerpts of record. What the court, district court said is it was the police. And it says the Chongzhu police did the following, and then you get the bullet points. Never was it suggested by them below or found by the district court that the wrongful actor was a private third party somehow. No, it was the police. It was the wrongful actor is purported to be the police and the district court found it. And that just cannot be either because of active state or because it's not contrary to the public policy of California or this country. Okay. Thank you, Your Honor. All right. We will. This is the end of our session, and we will adjourn this session. Adjourn. All rise. Session's adjourned.
judges: Pregerson, Paez, Smith